**Ruskin Moscou Faltischek, P.C.**
1425 RXR Plaza
East Tower, 15th Floor
Uniondale, New York 11556-0190
Telephone: 516.663.6600
jloftin@rmfpc.com
benck-smith@rmfpc.com
Jacqulyn S. Loftin, Esq.
Briana A. Enck-Smith, Esq.
*Attorneys for Alleged Debtor*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

In re:                                                                                        Involuntary Chapter 7

Lawrence Edward Feigen,                                              Case No. 8-26-70977-LAS
                                   Alleged Debtor.
-------------------------------------------------------------------x

## ALLEGED DEBTOR'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS INVOLUNTARY CHAPTER 7 BANKRUPTCY



*Counselors at Law*

1425 RXR PLAZA
UNIONDALE, NEW YORK  11556-1425
———
(516) 663-6600

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................

INTRODUCTION ...........................................................................................................................1

PRELIMINARY STATEMENT .....................................................................................................1

ARGUMENT ..................................................................................................................................3

    I.     THE COURT SHOULD DISMISS THE INVOLUNTARY
         PETITION PURSUANT TO FRCP 12(B)(1) BECAUSE THE
         PETITION IS JURISDICTIONALLY DEFECTIVE ....................................................3

         i.     The Involuntary Petition Does not have the Minimum Number
             of Petitioning Creditors Required under Bankruptcy Code
             Section 303(b)(1) ...................................................................................................3

         ii.    The Petitioning Creditor Failed to Meet Its Initial Burden................................4

    II.    THE PETITIONING CREDITOR FILED THE PETITION IN BAD
         FAITH.........................................................................................................................5

    III.   ALTERNATIVELY, THE COURT SHOULD ABSTAIN AND
         DISMISS THE PETITION UNDER BANKRUPTCY CODE
         SECTION 305............................................................................................................11

    IV.   FEIGEN IS ENTITLED TO COSTS, ATTORNEYS' FEES, AND
         DAMAGES PURSUANT TO BANKRUPTCY CODE SECTION
         303(i)..........................................................................................................................12

    V.    THE COURT SHOULD ORDER THE PETITIONER TO POST A
         BOND PURSUANT TO BANKRUPTCY CODE SECTION 303(e) ........................13

CONCLUSION...............................................................................................................................14

i

**TABLE OF AUTHORITIES**

Page(s)

Cases

In re Abir,
 No. 07-12877(ALG), 2007 WL 4556909 (Bankr. S.D.N.Y. Dec. 20, 2007)............................. 5

In re Amrusi,
 674 B.R. 591 (Bankr. E.D.N.Y. 2025) ................................................................................... 6, 8

In re Anmuth,
 600 B.R. 168 (Bankr. E.D.N.Y. 2019) ........................................................................... 7, 12, 13

In re BDC 56, LLC,
 330 F. 3d 111 (2d Cir. 2003)...................................................................................................... 3

In re B.B.S.I, Ltd.,
 81 B.R. 227 (Bankr. E.D.N.Y. 1988) ......................................................................................... 4

In re Bayshore,
 209 F.3d 100 (2d Cir. 2000)................................................................................................... 6, 7

In re CNG Foods LLC,
 2020 WL 4219679 (Bankr. E.D.N.Y. Jul. 13, 2020) ......................................................... 6, 7, 8

In re Elsa Designs, Ltd.,
 155 B.R. 859 (Bankr. S.D.N.Y 1993) ..................................................................................... 3, 4

In re Forever Green,
 804 F.3d 328 (3d Cir. 2015)....................................................................................................... 8

In re Green Hills Development Co., LLC,
 445 B.R. 647 (Bankr. S.D. Miss. 2011) ..................................................................................... 5

In re Monitor Single Lift I, Ltd.,
 381 B.R. 455 (Bankr. S.D.N.Y. 2008) ................................................................................. 11, 12

In re Mountain Dairies,
 372 B.R. 623 (Bankr. S.D.N.Y 2007) ...................................................................................... 13

In re Navient Solutions, LLC,
 625 B.R. 801 (Bankr. S.D.N.Y. 2021) ....................................................................................... 6

In re Persco Cont. and Trucking, Inc.,
 2010 WL 3766555 (Bankr. S.D.N.Y. Aug. 20, 2010) ............................................................. 12

In re Taub,
    438 B.R. 761 (Bankr. E.D.N.Y. 2010) .................................................................................. 8, 12

In re TPG Troy,
    2013 WL 3789344 (Bankr. S.D.N.Y. July 18, 2013).............................................................. 13

In re TPG Troy, LLC,
    793 F.3d 228..................................................................................................................... 12, 13

LNC Investments, Inc. v. Secured Equip. Trust of Eastern Airlines, Inc.
    No. 91-5049 (MBM), 1992 WL 295943 (S.D.N.Y. Oct. 8, 1992) ........................................... 14


Statutes

Bankruptcy Code Section 303 ................................................................................................ 1, 2, 5

Bankruptcy Code Section 303(b).............................................................................................. 3, 4, 5

Bankruptcy Code Section 303(b)(1) ............................................................................................ 3, 4

Bankruptcy Code Section 303(e)................................................................................................... 13

Bankruptcy Code Section 303(h)..................................................................................................... 5

Bankruptcy Code Section 303(i)........................................................................................... 2, 12, 13

Bankruptcy Code Section 303(i)(2) ....................................................................................... 12, 13

Bankruptcy Code Section 305 ....................................................................................................... 11

Bankruptcy Code Section 305(a)(1) .............................................................................................. 11


Rules

Fed. R. Bankr. P 1011 (b) ........................................................................................................... 1, 4

Fed. R. Bankr. P 1011 (c) .................................................................................................................. 4

Fed. R. Bankr. P 7009....................................................................................................................... 1

Fed. R. Bankr. P 7012(b) .................................................................................................................. 1

Fed. R. Civ. P. 12 ................................................................................................................ 4

Fed. R. Civ. P. 12(b) ........................................................................................................ 1, 4

Fed. R. Civ. P. 12 12(b)(1) .................................................................................................. 3

Other Authorities

H.R. Rep. No. 95-595 .......................................................................................................... 14

## INTRODUCTION

The alleged debtor, Lawrence Edward Feigen ("Alleged Debtor" or "Feigen"), respectfully submits this memorandum of law in support of his motion to dismiss ("Motion to Dismiss")  the petition for involuntary Chapter 7 bankruptcy ("Involuntary Petition") filed by only one petitioning creditor, Platinum Management Services, LLC ("Petitioning Creditor"), in the United States Bankruptcy Court, Eastern District of New York ("Court"), pursuant to Rule 1011(b) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and Rule 12(b) of the Federal Rules of Civil Procedure ("FRCP"), made applicable to this proceeding pursuant to Bankruptcy Rules 7012(b) and 7009 of the Federal Rules of Bankruptcy Procedure, respectively.

Filed contemporaneously herewith is the declaration of the Alleged Debtor, Lawrence Edward Feigen ("Feigen Declaration")[1] that sets forth the facts surrounding this jurisdictionally defective and meritless involuntary bankruptcy.

## PRELIMINARY STATEMENT

First, the Alleged Debtor submits that the involuntary bankruptcy filing is jurisdictionally defective, and therefore the Court lacks subject matter jurisdiction. Specifically, the involuntary bankruptcy is defective for two reasons: (i) it fails to satisfy procedural requirements of the minimum number of petitioning creditors; and (ii) the Petitioning Creditor fails to submit *prima facia* evidence that the debt of the Petitioning Creditor is liquidated, not contingent or subject to bona fide dispute.

Second, the Alleged Debtor submits that the Petitioning Creditor commenced the involuntary bankruptcy in bad faith, providing an independent basis for dismissal, even assuming *arguendo* that the Petitioning Creditor satisfied the statutory requirements of Bankruptcy Code

---

[1] Capitalized terms not otherwise defined herein shall have the definition ascribed to them in the Feigen Declaration.

1

section 303. The Bankruptcy Code does not define "bad faith," and the Second Circuit has not adopted a single test for its determination. Rather, courts in the Second Circuit apply a variety of standards, most frequently applying "the totality of the circumstances" standard, which considers factors such as whether the filing was motivated by ill will or harassment, was used as a tactical advantage in other disputes, or served as a substitute for customary debt-collection procedures.

Perhaps the most fundamental concept underlying Bankruptcy Code section 303, is that it should not be used as a debt collection tool on behalf of individual creditors. Rather, it exists as a narrow, policy-driven remedy designed to protect the creditor body when a debtor is generally failing to pay his debts as they come due.

In this case, the creditor body is not being protected—instead, it is being actively disregarded. Acting alone, the Petitioning Creditor has weaponized the involuntary bankruptcy process as a coercive debt collection tactic—deploying this Involuntary Petition amid ongoing settlement negotiations with the Alleged Debtor in a transparent effort to gain improper leverage over Feigen. Indeed, the Petitioning Creditor's counsel repeatedly conveyed the threat of involuntary bankruptcy to Feigen's counsel – leaving no doubt regarding the Petitioning Creditor's true motivation for this filing. This is precisely the type of bad faith conduct that Bankruptcy Code section 303 is intended to prevent.

Lastly, the Alleged Debtor is seeking damages, including costs, attorneys' fees if the Court finds the petition was filed in bad faith under Bankruptcy Code section 303(i).

For these reasons and the reasons set forth herein, the Alleged Debtor respectfully requests the Court dismiss the involuntary bankruptcy filed by the Petitioning Creditor.

2

## ARGUMENT

**I.    THE COURT SHOULD DISMISS THE INVOLUNTARY PETITION PURSUANT TO FRCP 12(B)(1) BECAUSE THE PETITION IS JURISDICTIONALLY DEFECTIVE**

### i.    The Involuntary Petition Does not have the Minimum Number of Petitioning Creditors Required under Bankruptcy Code Section 303(b)(1)

Feigen respectfully requests that the Court dismiss this involuntary bankruptcy for lack of subject matter jurisdiction over the Alleged Debtor since there are less than three (3) petitioning creditors while the Alleged Debtor has more than twelve (12) creditors. See Feigen Declaration. This jurisdictional defect is a basis for dismissal.

Pursuant to Bankruptcy Code section 303(b)(1), "an involuntary bankruptcy petition is commenced by the filing of a bankruptcy petition by three or more entities, each of which is either a holder of a claim against [the alleged debtor] that is not contingent as to liability or the subject of a bona fide dispute…if such [unsecured] claims aggregate at least $12,300.00." See 11 U.S.C. 303(b)(1).

An involuntary petition that does not meet the requirements of Bankruptcy Code section 303(b) must be dismissed because the bankruptcy court lacks subject matter jurisdiction over the alleged debtor. See Key Mechanical, Inc. V. BDC 56, LLC (In re BDC 56, LLC), 330 F. 3d 111, 118 (2d Cir. 2003) (noting that the requirement in Bankruptcy Code section 303(b) that a petitioning creditor's claim not be subject to a bona fide dispute is "subject matter jurisdictional"). See In re Elsa Designs, Ltd., 155 B.R. 859, 863 (Bankr. S.D.N.Y 1993).

Accordingly, a creditor attempting to invoke the bankruptcy court's jurisdiction in an involuntary case must "demonstrate at the earliest practicable point" that its involuntary petition satisfies the requirements of Bankruptcy Code section 303(b). Key Mechanical, Inc., 330 F. 3d at 118. A trial is not required to determine whether

3

an involuntary petition is jurisdictionally defective. In re Elsa Designs, 155 B.R. at 863; In re B.B.S.I, Ltd., 81 B.R. 227, 229-30 (Bankr. E.D.N.Y. 1988). A motion to dismiss pursuant to Fed. R. Civ. P. 12(b) is a "procedural vehicle available for the adjudication of involuntary bankruptcy petitions." In re Elsa Designs, 155 B.R. at 863; see Bankruptcy Rule 1011(b) (requiring defenses and objections to an involuntary petition to be presented as prescribed by FRCP 12); see FRCP 12 (permitting the defenses of lack of jurisdiction over the subject matter and failure to state a claim upon which relief can be granted to be presenting by a pre-answer motion); see Fed. R. Bankr. P 1011 (c) (providing that the service of a motion pursuant to Fed. R. Civ. P. 12(b) extends the time for filing a responsive pleading).

As set forth in the Feigen Declaration, the Alleged Debtor has more than twelve (12) creditors holding claims that are not contingent as to liability to the subject of a bona fide dispute.

Accordingly, for the involuntary petition to satisfy the jurisdictional requirements of Bankruptcy Code section 303(b)(1), there must be three (3) petitioning creditors, all of which hold claims that are not contingent as to liability or the subject of a bona fide dispute. In this case, the Petitioning Creditor has not met this threshold burden and therefore this Involuntary Petition is ripe for dismissal as a matter of law.

### ii.    The Petitioning Creditor Failed to Meet Its Initial Burden

A petitioning creditor seeking to file an involuntary bankruptcy petition must establish that its claim is not contingent as to liability and is not subject to a bona fide dispute as to liability or amount. The petitioning creditor bears the initial burden of proving these requirements through *prima facie* evidence.

Under Bankruptcy Code section 303(b), an involuntary bankruptcy is commenced by filing a petition by "three or more entities, each of which is either a holder of a claim against such person

4

that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount" See 11 U.S.C. § 303. This statutory language establishes two distinct requirements (i) the claim must not be contingent, and (ii) it must not be subject to a bona fide dispute. These requirements apply both to establish standing to file an involuntary petition under Bankruptcy Code section 303(b) and to obtain an order for relief under Bankruptcy Code section 303(h). See In re Green Hills Development Co., LLC, 445 B.R. 647 (Bankr. S.D. Miss. 2011).

Here, the Involuntary Petition is deficient because the Petitioning Creditor failed to provide *prima facie* evidence by way of an affidavit of eligibility establishing that its claim is not contingent and not subject to a bona fide dispute.

While Feigen acknowledges that the Petitioning Creditor obtained the Petitioning Creditor Judgment against him, that fact alone does not relieve the Petitioning Creditor of its burden, which it did not meet when it filed this involuntary bankruptcy. This is especially so in this case given the parties' contentious litigation history and the Petitioning Creditor's sharp tactics and its principal's personal animus towards Feigen.

## II.    THE PETITIONING CREDITOR FILED THE PETITION IN BAD FAITH

The Court should dismiss the Involuntary Petition because it was filed in bad faith by the Petitioning Creditor. See In re Abir, No. 07-12877(ALG), 2007 WL 4556909 at *4 (Bankr. S.D.N.Y. Dec. 20, 2007) ("It is well-established that courts have authority to dismiss an involuntary chapter 11 petition filed in bad faith . . .").

In this case, when considering the "totality of the circumstances" around the Petitioning Creditor's involuntary bankruptcy, the only conclusion that can be reached is that the Involuntary Petition was filed in bad faith and, thus, should be dismissed.

Since the Bankruptcy Code does not define "bad faith," courts within the Second Circuit

have used a variety of tests to determine the presence of bad faith. See In re CNG Foods LLC, 2020 WL 4219679, at *10 (Bankr. E.D.N.Y. Jul. 13, 2020). These tests include the "improper use" test, "improper purpose" test, objective test, and Bankruptcy Rule 9011 test. Id. at *10-11. The Court does not have to choose among the various tests to dispose of a case for bad faith as these tests are not different in their application. See id. at *11; see also, In re Amrusi, 674 B.R. 591 (holding that the different tests that have been articulated to assess bad faith may well not be so different in their application, and the Court does not have to choose among the various tests to dispose of the case).

For example, in In re Navient Solutions, LLC, 625 B.R. 801 (Bankr. S.D.N.Y. 2021), the Court held under whatever test the bankruptcy court applied, an involuntary bankruptcy petition filed against putative debtor in what was alleged to be an attempt to harm its reputation, as evidenced by attorneys' efforts to parade the case across the media, or to gain tactical advantage in pending litigation between parties, by creditors who made no effort to show that their claims were not subject to bona fide dispute or to comply with Bankruptcy Code requirements for involuntary petitions, was subject to being dismissed upon "bad faith" grounds. Id. at 815-16. As demonstrated below, the Petitioning Creditor's bad faith is established under any of these tests.

The "improper use" test finds bad faith when a petitioning creditor uses involuntary bankruptcy procedures to obtain a disproportionate advantage for itself rather than to protect against other creditors obtaining disproportionate advantages, particularly when the petitioner could have advanced its own interests in a different forum. In re CNG Foods LLC, 2020 WL 4219679, at *11 & *19 (quoting In re Bayshore, 209 F.3d 100, 105-06 (2d Cir. 2000). Here, it is clear that the Petitioning Creditor used the involuntary bankruptcy procedures in an attempt to obtain a disproportionate advantage for itself rather than to protect against other creditors obtaining

disproportionate advantages as demonstrated by the declaration submitted by Modern HR, Inc. ("Modern HR") and because no other creditor (even Feigen's largest creditor, CLS) joined in the Involuntary Petition, underscoring that this is, at its core, a two-party dispute that the Petitioning Creditor has improperly recast as a collective proceeding. Furthermore, the Petitioning Creditor was actively enforcing its judgment in the Supreme Court of New York, County of Nassau when it filed this Involuntary Petition.

The "improper purpose" test finds bad faith if the filing of the petition was motivated by ill will, malice, or a desire to embarrass or harass the alleged debtor. Id. at *11 & 19 (quoting In re Bayshore, 209 F.3d at 105-06). Here, the prepetition relationship demonstrates that the Involuntary Petition was filed for an improper purpose with ill will and malice as Feigen and the principal for the Petition Creditor had a contentious relationship.

The objective test for bad faith finds bad faith based on what a reasonable person would have filed the involuntary petition under the same circumstances. Id. at *11 & 20 (citing In re Bayshore, 209 F.3d at 105-06). The Bankruptcy Rule 9011 test concerns whether there is both subjective motivation and objective reasonableness of the petitioning creditor. See Id. at *11 & 20(citing In re Bayshore, 209 F.3d at 105-06). Here, the Petitioning Creditor was on notice and acknowledged, *before* filing the Involuntary Petition, that Feigen had more than twelve (12) creditors. See Feigen Declaration, Exhibit A. Despite this knowledge, the Petitioning Creditor proceeded to file the Involuntary Petition without conducting a reasonable inquiry into the claims and pertinent law.

Case law reveals a "totality of the circumstances" test is most frequently applied by courts in this district. See id. at *11; (citing In re Anmuth, 600 B.R. at 191 ("[M]ost courts' determining whether to award damages under 303(i)(2) … have adopted a 'totality of the circumstances test.'"

(quoting In re Taub, 438 B.R. 761, 775 (Bankr. E.D.N.Y. 2010)); see also In re Forever Green,

804 F.3d 328, 336 (3d Cir. 2015) (adopting totality of the circumstances test as "suitable for

evaluating the myriad ways in which creditors filing an involuntary petition could act in bad

faith"). The totality of the circumstances test considers factors that include, but are not limited to,

whether:

> (1) the creditors satisfied the statutory criteria for filing the petition;
> (2) the involuntary petition was meritorious; (3) the creditors made
> a reasonable inquiry into the relevant facts and pertinent law before
> filing; (4) there was evidence of preferential payments to certain
> creditors or of dissipation of the debtor's assets; (5) the filing was
> motivated by ill will or a desire to harass; (6) the petitioning
> creditors used the filing to obtain a disproportionate advantage for
> themselves rather than to protect against other creditors doing the
> same; (7) the filing was used as a tactical advantage in pending
> actions; (8) the filing was used as a substitute for customary debt-
> collection procedures; and (9) the filing had suspicious timing.

In re Forever Green, 804 F.3d at 336.

In In re CNG Foods LLC, citing In re Forever Green, this Court found that the involuntary

petition was filed to stall or halt a contempt hearing, the petitioning creditors attempted to use the

petition to gain control of the debtor (i.e. obtain a disproportionate advantage for themselves).

Moreover, this Court found that petitioning creditors failed to properly serve the summons, and

petitioning creditors failed to conduct a reasonable inquiry before filing the petition and their

alleged claims are illegitimate or subject to a bona fide dispute. In re CNG Foods LLC, 2020 WL

4219679, at *11-19 (Bankr. E.D.N.Y. Jul. 13, 2020).

In In re Amrusi, 674 B.R. 591, 623-26 (Bankr. E.D.N.Y. 2025), after reviewing the "totality

of the circumstances", the Court ultimately held the involuntary petition was not motivated by a

legitimate bankruptcy purpose, but by ill will or a desire to harass and the petition lacked merit

because, among other reasons, the parties had a long history of litigation prior to the instant

involuntary case, including involvement in two state-court actions in which alleged debtor had prevailed and four different bankruptcy cases, each of which had been dismissed.

Here, the circumstances surrounding this Involuntary Petition reflect the presence of nearly every factor, warranting a conclusion of bad faith under the "totality of circumstances" test **and** the improper purpose test.

The Petitioning Creditor was on notice and acknowledged, before filing the Involuntary Petition, that Feigen had more than twelve (12) creditors. See Feigen Declaration, Exhibit A. Despite this knowledge, the Petitioning Creditor filed the Involuntary Petition, disregarding these facts and using the involuntary bankruptcy process to obtain a disproportionate advantage for itself, rather than to prevent such an advantage among creditors.

As set forth in greater detail in the Feigen Declaration, the Petitioning Creditor's Judgment arises from his sale of his interest in SAH and SARE (f/k/a SA Hospital) to Feigen and Ahlholm. Following that transaction, Feigen and Ahlholm became co-managing members and 90% owners of SAH and SARE, respectively. Thereafter, the Petitioning Creditor initiated an arbitration proceeding relating to the transaction, in which he ultimately prevailed. The parties subsequently entered into a settlement agreement, which Feigen defaulted on, resulting in a Petitioning Creditor's Judgment against Feigen and Ahlholm, jointly and severally.

Despite holding this Petitioning Creditor Judgement against both obligors, the Petitioning Creditor has directed its collection efforts exclusively at Feigen. Tellingly, the Petitioning Creditor has not exercised any of its rights as a judgment creditor against Ahlholm (or the primary obligor, SA Hospital), a Los Angeles based investment banker. Instead, the Petitioning Creditor has pursued relief solely against Feigen, including: (i) domesticating the judgment only against Feigen; (ii) serving information subpoenas; (iii) filing contempt motions; Feigen; and (v) filing this

Involuntary Petition.

Nonetheless, Feigen fully complied with all post-judgment discovery and was actively engaged in good faith settlement negotiations, rendering the Petitioning Creditor's decision to file this involuntary petition particularly unwarranted. Throughout these settlement discussions, the Petitioning Creditor's counsel repeatedly conveyed the threat of an involuntary bankruptcy proceeding and further represented that the Petitioning Creditor's principal, Klein, was "very angry" at Feigen and inexplicably viewed this matter—a garden variety commercial dispute arising from the personal guarantee of hospital leasing equipment—as "personal".

Indeed, the Petitioning Creditor was already fully engaged in customary state court collection procedures, including issuing multiple subpoenas to Feigen, his wife, and numerous third-party financial institutions. In turn, Feigen has produced approximately 10,000 pages of sensitive personal financial information, including draft copies of tax returns and other information regarding his personal finances and business interests. Yet, when the state court granted Feigen a brief adjournment due to unforeseen circumstances arising from Feigen being momentarily stranded in Israel during the outbreak of war with Iran, the Petitioning Creditor immediately filed this involuntary proceeding mere hours after the State Court granted the adjournment in the pending state court action. The timing is not merely suspect—it underscores that the Petitioning Creditor is using the bankruptcy process as a tactical device to gain leverage in pending proceedings and as a substitute for traditional debt-collection remedies, rather than for any legitimate bankruptcy purpose.

Moreover, it is evident that the Petitioning Creditor is using this involuntary bankruptcy filing to obtain a disproportionate advantage for itself, rather than to prevent such an advantage among creditors. No other creditor (including Feigen's largest, CLS) has joined in the Petition,

10

highlighting that this is, at its core, a two-party dispute being improperly recast as a collective proceeding. Not only did the Petitioning Creditor fail to secure the participation of any additional creditors, but one of Feigen's largest creditors has affirmatively opposed this involuntary proceeding and submitted a declaration in support of the Motion to Dismiss. This opposition further confirms that the Petition does not serve the interests of the creditor body as a whole. See Feigen Declaration, Exhibit D.

At the time the Involuntary Petition was filed, the parties were actively engaged in settlement negotiations concerning a payoff plan for the Petitioning Creditor's Judgment, further demonstrating that the filing was intended to gain leverage in those discussions.

Accordingly, the Petitioning Creditor filed in bad faith.

### III.    ALTERNATIVELY, THE COURT SHOULD ABSTAIN AND DISMISS THE PETITION UNDER BANKRUPTCY CODE SECTION 305

As described herein, the Petitioning Creditor is improperly attempting to use the involuntary Chapter 7 process and obtain an unfair advantage over other creditors. These objectives violate the policies, precepts and principles underpinning the Bankruptcy Code and support the dismissal of the Involuntary Petition under Bankruptcy Code section 305(a)(1).

This Bankruptcy Court is permitted to abstain from and dismiss any bankruptcy case pursuant to Bankruptcy Code section 305 when "the interests of creditors and the debtor would be better served by such dismissal …[.]" 11 U.S.C. § 305(a)(1). The decision to abstain is made on a case-by-case basis looking at the totality of the circumstances. In re Monitor Single Lift I, Ltd., 381 B.R. 455, 464 (Bankr. S.D.N.Y. 2008).

Courts have relied on the following factors in considering abstention: (a) the economy and efficiency of administration; (b) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in a state court; (c) whether federal proceedings

are necessary to reach a just and equitable solution; (d) whether there is an alternative means of achieving an equitable distribution of assets; (e) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (f) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (g) the purpose for which bankruptcy jurisdiction has been sought. Id. at 464–65 (citing cases).

Although all factors are considered "not all are given equal weight in every case." Id. The last consideration, i.e., the purpose for which the involuntary petition was filed, has been regarded as "the most important factor." In re Persco Cont. and Trucking, Inc., 2010 WL 3766555, at *4 (Bankr. S.D.N.Y. Aug. 20, 2010).

Here, the purpose for filing the Involuntary Petition alone warrants abstention and dismissal, but the other considerations also demonstrate that the interests of Feigen's creditors would be better served by such dismissal.

## IV.    FEIGEN IS ENTITLED TO COSTS, ATTORNEYS' FEES, AND DAMAGES PURSUANT TO BANKRUPTCY CODE SECTION 303(i)

Feigen seeks the imposition of and preserves its rights under the Bankruptcy Code (including, but not limited to, section 303(i)) to pursue all damages and related remedies against Petitioner Creditor resulting from the filing of the Petition.

In re Anmuth Holdings LLC, 600 B.R. 168, 191 (Bankr. E.D.N.Y. 2019) ("[M]ost courts 'determining whether to award damages under § 303(i)(2) … have adopted a 'totality of the circumstances test.'" (quoting In re Taub, 438 B.R. 761, 775 (Bankr. E.D.N.Y. 2010))

Feigen reserves the right to supplement his request for damages in additional pleadings at the Court's request. In the Second Circuit, "[w]hen an involuntary petition is dismissed, 'there is a presumption that costs and attorney's fees will be awarded to Feigen.'" In re TPG Troy, LLC,

793 F.3d 228, 235 (2d Cir. (2015) (quoting In re Mountain Dairies, 372 B.R. 623, 637 (Bankr. S.D.N.Y 2007). Fees and costs spent in litigating a section 303(i) request may be included in the award. See In re TPG Troy, 2013 WL 3789344, at \*4 (Bankr. S.D.N.Y. July 18, 2013). The Second Circuit typically applies a "totality of the circumstances" test to determine whether a debtor should be awarded fees and costs. In re TPG Troy, 793 F.3d at 235. In addition to fees and costs, a debtor may be awarded damages under section 303(i)(2) upon the finding of bad faith. See 11 U.S.C. § 303(i)(2).

Punitive damages under Bankruptcy Code section 303(i)(2) may be awarded whether there is proof of actual damages to punish the wrongdoer and deter similar conduct in the future. See In re Anmuth Holdings, 600 B.R. 168, 202 (Bankr. E.D.N.Y. 2019). Finally, it is within a court's discretion to determine the allocation of liabilities under Bankruptcy Code section 303(i)(2). Id. at 205.

For the reasons described herein, the Court should award Feigen all its costs and reasonable attorneys' fees as well as damages. The purpose behind the Petitioner Creditor's decision to file the Involuntary Petition is grounded in ulterior motives rather than a sincere belief that the Bankruptcy Court is the forum that serves the best interests of the creditors involved.

## V. THE COURT SHOULD ORDER PETITIONER TO POST A BOND PURSUANT TO BANKRUPTCY CODE SECTION 303(e)

Feigen respectfully requests that the Court require the Petitioner Creditor to post a bond to indemnify Feigen for such damages that the Bankruptcy Court may allow under Bankruptcy Code section 303(i).

Pursuant to Bankruptcy Code section 303(e), the Bankruptcy Court may require the petitioners to file a bond to "indemnify the debtor for such amounts as the court may later allow under subsection (i) of this section." This "bonding requirement is designed to 'discourage

frivolous petitions as well as the more dangerous spiteful petitions .... "' <u>LNC Investments, Inc. v. Secured Equip. Trust of Eastern Airlines, Inc.</u>, No. 91-5049 (MBM), 1992 WL 2955943 at *6 (S.D.N.Y. Oct. 8, 1992) (quoting H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 323 (1977)).

Here, there is a clear need not only to discourage frivolous petitions, but to deter the misuse of the involuntary bankruptcy process as a coercive litigation tool. Accordingly, Feigen respectfully requests that the Petitioning Creditor be required to post a bond.

For all of the foregoing reasons, Feigen respectfully requests that the Court: (1) dismiss the Involuntary Petition; (2) award Feigen his attorney's fees, costs, and actual, consequential, and punitive damages; (4) require the Petitioning Creditor to post a bond; and (5) such other and further relief that the Court deems just and proper.

<u>**CONCLUSION**</u>

**WHEREFORE,** for the reasons set forth above, the Alleged Debtor, Lawrence E. Feigen, respectfully requests that the Court enter an order dismissing the Involuntary Petition, together with such other and further relief as this Court deems just and proper.

Dated:  April 14, 2026
       Uniondale, New York

                                             **RUSKIN MOSCOU FALTISCHEK, P.C.**
                                             *Counsel for Alleged Debtor Lawrence Feigen*

               By:     *s/ Jacqulyn S. Loftin*
                          Jacqulyn S. Loftin
                          Briana A. Enck-Smith
                          1425 RXR Plaza
                          East Tower, 15th Floor
                          Uniondale, New York 11556-1425
                          Telephone: 516.663.6638
                          jloftin@rmfpc.com
                          benck-smith@rmfpc.com

14