**Gutnicki LLP**
4711 Golf Road, Suite 200
Skokie, IL 60076
Telephone: (847) 933-9280
mgranek@gutnicki.com
jsykes@gutnicki.com
Miriam Stein Granek, Esq.
Jeremy Sykes, Esq.
*Attorneys for Petitioning Creditor*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re:                                                          Involuntary Chapter 7

Lawrence Edward Feigen,                          Case No. 8-26-70977

               Alleged Debtor.
------------------------------------------------------------x

**PETITIONING CREDITOR'S MEMORANDUM OF LAW IN OPPOSITION TO THE
MOTION TO DISMISS INVOLUNTARY CHAPTER 7 BANKRUPTCY**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................................ii

PRELIMINARY STATEMENT....................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................... 2

ARGUMENT .................................................................................................................................... 7

    I.     THE INVOLUNTARY PETITION WAS FILED IN GOOD FAITH ............................... 7

        A.   The Petitioning Creditor Holds a Non-Contingent, Undisputed Claim.......................... 7

        B.   The Involuntary Petition was Filed for a Proper Purpose................................................ 8

        C.   No Improper Motive Exists ............................................................................................. 9

    II.    FEIGEN HAS FAILED TO PROVE HE HAS 12 QUALIFYING CREDITORS....... 10

    III.   OTHER CREDITORS MAY JOIN IN THIS INVOLUNTARY CASE....................... 13

    IV.   In Unlikely Event that Involuntary is Dismissed – No Damages are Warranted.......... 14

CONCLUSION............................................................................................................................... 14

## TABLE OF AUTHORITIES

Cases                                                                                          Page(s)

In re All Media Props., Inc.,
    5 B.R. 126 (Bankr. S.D. Tex. 1980), aff'd, 646 F.2d 193 (5th Cir. 1981).................................. 13

In re Bayshore Wire Prods. Corp.,
    209 F.3d 100 (2d Cir. 2000)........................................................................................... 7, 14

In re B.B.S.I., Ltd.,
    81 B.R. 227 (Bankr. E.D.N.Y. 1988)................................................................................... 10

In re Blaine Richards & Co., Inc.,
    10 B.R. 424 (Bankr. E.D.N.Y. 1981)................................................................................... 11

In re Drexler,
    56 B.R. 960 (Bankr. S.D.N.Y. 1986) ..................................................................................... 7

In re Elsa Designs, Ltd.,
    155 B.R. 859 (Bankr. S.D.N.Y. 1993) ............................................................................ 10, 11

In re Euro-Am. Lodging Corp.,
    357 B.R. 700 (Bankr. S.D.N.Y. 2007) .................................................................................. 10

In re Forever Green Athletic Fields, Inc.,
    804 F.3d 328 (3d Cir. 2015)........................................................................................... 7, 8, 9

In re Manhattan Indus., Inc.,
    224 B.R. 195 (Bankr. M.D. Fla. 1997)............................................................................ 7, 8, 9

In re Mavellia,
    149 B.R. 301 (Bankr. E.D.N.Y. 1991).................................................................................. 13

In re Murray,
    900 F.3d 53 (2d Cir. 2018)..................................................................................................... 9

In re Speer,
    522 B.R. 1 (Bankr. D. Conn. 2014)........................................................................................ 7

In re Taub,
    427 B.R. 208 (Bankr. E.D.N.Y. 2010), aff'd, No. 08 BK 44210 ESS, 2011 WL 1322390
    (E.D.N.Y. Mar. 31, 2011) ...................................................................................................... 8

In re Trusted Net Media Holdings, LLC,
    550 F.3d 1035 (11th Cir. 2008)............................................................................................ 14

In re BDC 56 LLC,
  330 F.3d 111 (2d Cir. 2003), abrogated by In re Zarnel, 619 F.3d 156 (2d Cir. 2010)......... 7, 13

U.S. Fid. & Guar. Co. v. DJF Realty & Suppliers, Inc.,
  58 B.R. 1008 (N.D.N.Y. 1986) ..................................................................................................... 7

United States v. Yalincak,
  30 F.4th 115 (2d Cir. 2022)......................................................................................................... 8


Statutes

Bankruptcy Code Section §303(b)............................................................................................. 1, 2

Bankruptcy Code Section Section 303(c)...................................................................................... 13

Petitioning Creditor Platinum Management Services LLC ("Platinum") respectfully submits this memorandum of law in opposition to the motion to dismiss ("Motion to Dismiss") filed by the alleged debtor Lawrence Edward Feigen ("Feigen").

## PRELIMINARY STATEMENT

The Motion to Dismiss rests on the unsupported assertion that Feigen has twelve or more qualifying creditors under 11 U.S.C. §303(b), thereby requiring at least three petitioning creditors. However, to date, that assertion is not credible and Feigen has not met his burden of establishing the existence of twelve or more qualifying creditors. To the contrary: (a) public judgment searches demonstrate fewer than twelve eligible creditors and only two judgments owed to Platinum and Commercial Loan Servicing LLC ("CLS"); (b) Feigen has failed to provide competent evidence or documentation to substantiate his claim – in fact, his counsel failed to respond to Platinum's request for a list of Feigen's creditors; (c) in Feigen's recent Verified Responses to Information Subpoena, signed less than three months ago on February 10, 2026, Feigen stated that he had only five (5) creditors including Platinum; and (d) several of Feigen's purported creditors may likely be disqualified under §303(b) because they are secured, contingent, subject to bona fide dispute, or otherwise ineligible.

By contrast, the Platinum Judgment is a non-contingent and undisputed claim. In the last few years, Feigen has failed to pay the Platinum Judgment and, instead, has dissipated his assets as shown by the sharp decline in his financial statement from 2020 to the present. More recently, Feigen has transferred substantial amounts to "preferred" creditors, such as HR Modern and IWC Innovations, Inc., which are avoidable in bankruptcy. Platinum's and other creditors' interests would be best served and protected in this bankruptcy forum Indeed, the declaration of Ben Klein, manager and C.E.O. of Platinum, demonstrates that Platinum commenced this case to preserve

1

estate value, prevent further dissipation of assets and recover fraudulent and preferential transfers – not for any improper purpose.

As discussed below, Motion to Dismiss should be denied because (i) the involuntary petition was filed in good faith and not for any improper purpose, and (ii) Feigen has either failed to meet his burden of establishing that he has twelve or more qualifying creditors under 11 U.S.C. §303(b). Alternatively, to the extent the Court finds that Feigen has more than twelve creditors (a fact which remains in dispute), Platinum should be afforded additional time to join two (2) additional creditors to support this involuntary bankruptcy.

**STATEMENT OF FACTS**

Platinum's claim originates from an Agreement for Judgment entered on September 16, 2024 in the matter of *Platinum Management Services LLC, Plaintiff v. SA Hospital Acquisition Group, LLC, Jeffrey K. Alholm and Lawrence Edward Feigen, Defendants,* pending in the Superior Court for the Commonwealth of Massachusetts as Case No. 2377CV00066 (the "SA Hospital Litigation"), against SA Hospital Acquisition Group, LLC ("SA Hospital"), Jeffrey K. Alholm and Feigen joint and severally in the amount of $1,100,000.00 (the "Platinum Judgment"), a copy of is attached to the Declaration as *Exhibit A*.

By way of background, Platinum was one of the sellers of SA Hospital pursuant to a Purchase and Sale Agreement, dated June 7, 2021 ("PSA") and Feigen was one of the purchasers. After the execution of the PSA, Platinum became a named defendant in the SA Hospital Litigation commenced by NFS Leasing, Inc. ("NFS") against SA Hospital and others in a breach of contract action regarding equipment leased to SA Hospital.

After the commencement of the SA Hospital Litigation, Platinum and NFS entered into a settlement agreement, dated August 30, 2023, wherein Platinum paid NFS the sum of $1,500,000,

*inter alia*, and Platinum was substituted as the Plaintiff in the action.    Thereafter, Platinum submitted a Demand for Arbitration with the American Arbitration Association against Feigen and other defendants. On or about April 24, 2024, the arbitrator issued an Award of Arbitration stating, *inter alia*, Feigen was jointly liable to Platinum in the amount of $724,607.75 (the "Arbitration Award").

On June 16, 2024, Platinum commenced an action with the Supreme Court of the State of New York, Nassau County, to enforce the Arbitration Award ("New York Litigation").  The New York Litigation was withdrawn when the parties entered into a Settlement Agreement and Release (the "Settlement Agreement"), dated in or about July 2024, in the SA Hospital Litigation. Pursuant to the Settlement Agreement, Feigen and other defendants in the SA Hospital Litigation were to pay Platinum the sum of $860,000 in three installments: $350,000 by July 31, 2024, $260,000 by September 27, 2024 and $250,000 by December 30, 2024 and, in the event that the settlement payments were not timely made, Platinum was entitled to a judgment for $1,100,000.00.

Feigen and the other defendants defaulted on all three settlement payments and, as a result, Platinum recorded the Agreement for Judgment on September 16, 2024 in the sum of $1,100,000. On November 24, 2024, a Writ of Execution was issued by the clerk of the Superior Court of Massachusetts, Essex County.

On May 6, 2025, the Platinum Judgment was recorded with County Clerk of Nassau County, New York as Instrument No. 2025-00098081 against Feigen. As of this date, no portion of the Platinum Judgment has been paid by Feigen or any of the other defendants in the SA Hospital Litigation.  Further, no portion of the Platinum Judgment has been vacated or modified.  There is no bona fide dispute as to the outstanding Judgment amount owed to Platinum by Feigen.

4937-2698-4872, v. 4

Since June 2024, Platinum has attempted to collect on the Arbitration Award, then the Settlement, and then the Platinum Judgment.  In September 2025, Feigen was served with an Information Subpoena. Feigen failed to comply, resulting in Platinum applying to the State Court of Nassau County for an order holding Feigen in contempt, and other ancillary relief. Feigen did not oppose Platinum's application for contempt, resulting in the State Court of Nassau County to schedule a contempt hearing for February 18, 2026.  Only on the eve of the contempt hearing in February 2026, did Feigen produce limited responses to the Information Subpoena. Also, in connection to Platinum's Subpoena Duce Tecum of February 2026, Feigen produced multiple documents with limited financial information, Other financial documentation was obtained, e.g., bank account records, through subpoenas served directly on various banks. This subpoenaed information shows a pattern of dissipation of assets starting as early as 2022.

Specifically, Feigen produced a document titled "Statement of Financial Condition of Lawrence and Simi Feigen" dated September 17, 2020 (the "2020 Financial Statement"). A copy of the 2020 Financial Statement is attached to the Declaration as *Exhibit B*. The 2020 Financial Statement shows Feigen had a net worth of more than $100 Million in 2020 including $3,250,000 in personal property (autos, jewelry), life insurance worth $100,784, notes and receivables worth more than $2 Million, securities worth $109,203 and real estate worth $30,853,226.  However, in Feigen's Verified Response to Information Subpoena, signed February 10, 2026, ("Feigen Verified Response"), Feigen claims to have none of these assets in 2026, even though he also states that he has not sold or transferred any assets from 2022 through the present.  Similarly, Feigen claims to have had $11,535,092 in real estate mortgages in 2022, and in 2026 he claims to have none. A copy of the Feigen Verified Response is attached to the Declaration as *Exhibit C*.

4

The dissipation of assets between 2020 and 2026 is shown most clearly by the following Feigen Verified Responses:

- *See* Feigen Verified Response page 17 (Response 22): "*For each vehicle of any nature in which you have an interest ... state nature of the vehicle, your interest therein, name in which vehicle is registered; make model and year of each ... present value of said asset.*" – Response: "*There is no information responsive to this because Mr. Feigen does not have an interest in any vehicle.*"

- *See* Feigen Verified Response page 17 (Response 23): "*List all household goods, furniture, jewelry and furs with a value in excess of $1,000 Dollars which you have an interest.*" To which Feigen responded: "None."

- *See* Feigen Verified Response page 19 (Response 27): "*State the names and addresses of all persons who owe you money.*" To which Feigen responded: "None."

- *See* Feigen Verified Response page 19 (Response 28): "*Itemize all shares of stocks, securities, bonds, mortgages and other investments other than real estate ....*" To which Feigen responded: "None."

- *See* Feigen Verified Response page 20 (Response 29): "*Are the holder of mortgages, accounts receivable, notes or other evidence of indebtedness ...*" to which Feigen responded: "No."

- *See* Feigen Verified Response page 22 (Response 34): "*If you have or had any interests of whatever kind, whether legal, equitable, beneficial or other in any real property, in your name or in the name of another person, Business or entity ...*" was "None-not applicable."

5

- *See* Feigen Verified Response page 23 (Response 35): "*Mr. Feigen has not sold or otherwise disposed of any real property in which he has had an interest within the last three (3) years.*" Yet, the Feigen 2020 Financial Statement shows real estate with a market value in excess of $30 Million and Schedule I of Feigen's 2023 tax return includes rental income of $40,513. Additionally, Feigen's bank records in 2023 reflect mortgage payments for property in Israel and said Israeli properties are listed on Feigen's 2020 Financial Statement. Yet, Feigen's discovery responses deny ownership of other real estate in 202.

Feigen responded to the Information Subpoena that he is the Trustee for the Lawrence and Simi Family Trust (the "<u>Feigen Family Trust</u>"), but in response to whether he received any income, benefit or assets from the Feigen Family Trust, Feigen's response was "None." Yet, a letter from Yefim Sklyar, CPA dated August 3, 2023 (the "<u>Accountant Letter</u>") and the attached schedule for calendar year 2022 shows that more than $3 million was deposited into the Feigen Family Trust, mostly from Feigen's businesses, commingling Feigen's personal assets and income with those of the Feigen Family Trust. A copy of the Accountant Letter is attached hereto as *Exhibit D*.

The dissipation of assets and transfer of personal assets to a family trust further underscore the need for bankruptcy. For the benefit of Platinum, and any other creditor of Feigen, the bankruptcy case will protect Feigen's remaining assets to satisfy his debts. The timing of the commencement of the involuntary proceeding was not "suspect" as claimed by Feigen. On the contrary, the timing was necessary to prevent the further dissipation of assets and preserve the 4-year fraudulent conveyance lookback and 90-day preference avoidance period for the benefit of all creditors.

6

## ARGUMENT

### I.    THE INVOLUNTARY PETITION WAS FILED IN GOOD FAITH

In determining whether an involuntary petition is filed in bad faith, the Second Circuit applies a flexible, fact-intensive standard to determine the totality of the circumstances.  *See In re Bayshore Wire Prods. Corp.,* 209 F.3d 100, 105 (2nd Cir. 2002).  Bankruptcy courts consider factors such as: (a) whether creditors hold legitimate claims; (b) whether the petition was used as a collection device; (c) whether there was an improper motive, and (d) whether the filing served a valid bankruptcy purpose. *See In re Forever Green Athletic Fields, Inc.*, 804 F.3d 328, 335 (3rd Cir. 2015).  As a threshold matter, there is a presumption that an involuntary petition is filed in good faith.  *In re Speer*, 522 B.R. 1, 9 (Bankr. D. Conn. 2014) *citing U.S. Fidelity & Guar. Co. vs. DJF Realty & Suppliers, Inc.*, 58 B.R. 1008, 1011 (N.D.N.Y. 1986) ("courts have generally required nearly unconscionable behavior before finding bad faith").

### A.    The Petitioning Creditor Holds a Non-Contingent, Undisputed Claim

Section 303(b) requires that a petitioning creditor hold a claim that is not contingent and not subject to a bona fide dispute. A bona fide dispute exists only when there is an "objective basis" for dispute. *Key Mech, Inc. vs. BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d 111, 118 (2nd Cir. 2003). A petitioning creditor establishes a prima facie case that no bona fide dispute exists shifting the burden to the debtor to demonstrate the existence of a bona fide dispute.  *Id.*  In this case, Feigen has not identified any factual or legal dispute as to the liability or amount due to Platinum, which is clearly established by the unsatisfied Judgment.  The general rule is that an unappealed, unstayed final judgment is not subject to a "bona fide dispute."  *Manhattan Industries*, 224 B.R. 195, 220 (Bankr. S.D.N.Y. 1998) *citing In re Drexler*, 56 B.R. 960 (Bankr. S.D.N.Y. 1986).

The debt owed to Platinum pursuant to the Judgment is not contingent, is undisputed and still owing by Feigen.  The joint and several nature of the Judgment means that Feigen owes the entirety of the Judgment to Platinum.  *United States vs. Yalincak*, 30 F.4th 115 (2nd Cir. 2022) ("Where two co-defendants in a civil lawsuit are found jointly and severally liable for the full amount of the damages, the plaintiff can collect that entire amount from one defendant, in full, without collecting anything from the other defendant, if that is the most expedient way for the plaintiff to enforce the judgment and be made whole (as, for example, where one defendant is wealthier than the other, or where the plaintiff can more easily attach the assets of one defendant than those of the other.")).  Accordingly, directing collection activity against Feigen and not the other co-obligors is procedurally proper and is not evidence of bad faith.

**B.      The Involuntary Petition was Filed for a Proper Purpose**

Courts routinely find good faith where creditors seek to prevent dissipation of assets or ensure equal treatment.  *See In re Manhattan Indus., Inc.*, 224 B.R. 195, 201 (Bankr. S.D.N.Y. 1998).  Courts similarly recognize that an involuntary filing is appropriate where creditor interests are at risk.  *In re Taub*, 427 B.R. at 231.  The Court in *Forever Green Athletic Fields*, recognized that one of the proper reasons in filing an involuntary is "to protect against preferential treatment of other creditors or the dissipation of the debtor's assets."  804 F.3d 328, 335 (3rd Cir. 2015).

In this case, there is a true and immediate risk of dissipation of assets.  The Feigen discovery responses in 2026 demonstrate that his financial condition has deteriorated by millions of dollars.  Further, the letter from his accountant shows significant personal assets have commingled with and funded the Feigen Family Trust.

Further, according to the Declaration, at least one creditor, HR Modern, has received substantial preferential transfers from Feigen, and potentially also IWC Innovation, Inc ("IWC").

8

The payments to HR Modern, and potentially other preferential transfers, can be avoided for the benefit of all creditors.

### C.      No Improper Motive Exists

Bad faith requires evidence of improper purpose such as harassment or litigation advantage. *In re Murray*, 900 F.3d at 61.  No such evidence exists here.  Platinum seeks only to invoke the collective remedies of the Bankruptcy Code.  In term of allocating burden of proof, creditors are presumed to have acted in good faith.  *Forever Green Athletic Fields,* 804 F.3d at 335. To dismiss an involuntary petition, the debtor must show by a preponderance of the evidence that Platinum acted in bad faith. *Id.*

Feigen argues that this case is "personal."  However, this case originated from a business transaction – the sale of the hospital.  Platinum expended $1,500,000 to satisfy a business debt owed to NFS from Feigen and related entities.  Platinum obtained a Judgment in the amount of $1,100,000.00 against Feigen and two other defendants, jointly and severally.  Platinum sought relief through the court system to collect on the Judgment.  After several years of attempting to collect the Judgment and due to concerns about Feigen's dissipation of his assets to avoid collection, Platinum has sought bankruptcy remedies.  Dismissal of the bankruptcy proceeding would undermine the purposes of the bankruptcy code and permit Feigen to continue to his conduct to the detriment of Platinum and other creditors.  *See In re Manhattan Indus., Inc.,* 224 B.R. at 200-01.

One of the tests evaluating whether a party filed in bad faith is whether the petitioner could have advanced its own interests in a different forum.  *Id.*  In this case, Platinum attempted to collect its debt over several years – both in arbitration, settlement and then litigation.  All the while, Feigen has used this time to dissipate assets and prefer certain creditors over others (for example, HR

Modern and potentially IWC). Bankruptcy is the most equitable venue to satisfy Platinum's debt, pari passu with any other of Feigen's debts.

Feigen argues that the "circumstances surrounding" the involuntary reflect the presence of bad faith. Feigen is wrong. Feigen's attorney stated Feigen had more than twelve creditors. However, when asked who they were, he remained silent. Moreover, while Platinum attempted to settle its Judgment, Feigen failed to abide by any settlement proposals. Finally, the discovery responses by Feigen showed a pattern of fraudulent conveyances and dissipation of assets which warranted immediate relief form the bankruptcy court. This involuntary case will not provide disproportionate relief to Platinum, as argued by Feigen. To the contrary, Platinum will be required to share pro rata with all other creditors – which is a welcome relief because that is in the best interest of all creditors.

## II.    FEIGEN HAS FAILED TO PROVE HE HAS 12 QUALIFYING CREDITORS

The alleged debtor bears the burden of establishing the existence of twelve or more qualifying creditors. *In re Elsa Designs, Ltd.,* 155 B.R. 859, 863 (Bankr. S.D.N.Y. 1993). Courts in this District require credible, admissible evidence of creditor eligibility and may resolve the issue at the dismissal stage. *In re B.B.S.I., Ltd.,* 81 B.R. 227, 231 (Bankr. E.D.N.Y. 1988). Creditors that are contingent, disputed, insiders or fully secured are excluded from the count. *In re Euro-American Lodging Corp.*, 357 B.R. 700, 712 (Bankr. S.D.N.Y. 2007).

Feigen claims to have twelve creditors. However, his declaration offers only conclusory assertions regarding his debts. Feigen has not provided supporting documentation (such as copies of judgments, account statements, contracts) or evidence that such claims are noncontingent, not subject to bona fide dispute or are not fully secured.

10

Feigen's assertions in his declaration regarding twelve creditors conflict with Feigen's Verified Response of February 10, 2026.  In Addendum B – dated February 10, 2026 – *only 1 month prior to the Involuntary filing on March 11, 2026* - Feigen disclosed five (5) creditors at that time, including Platinum. In Addendum B (page 32), Feigen lists the following creditors in response to Question 36: "*Set forth in detail any outstanding obligations, including mortgages, conditional sales contracts, contract obligations, promissory notes, and/or loans not included in your answers to any previous questions …*"

Addendum B

- Commercial Loan Servicing Judgment dated 6/7/24 in the amount of $81,41,750

- Modern HR Judgment dated 11/14/24 in the amount of $407,395

- Platinum Judgment dated 9/16/24 in the amount of $1,100,000

- IWC Innovations Settlement Agreement dated 12/23/24 in the amount of $160,000

- Thomas Konig loan agreement dated May 1, 2023 in the amount of $500,000.

A copy of Addendum B is attached hereto as *Exhibit E* (it is also page 32 of *Exhibit B*).

Feigen's assertions also conflict with the recent judgment search in New York and California which shows that Feigen has no judgments in those jurisdictions other than the Platinum Judgment and the CLS judgment. *See* judgment search attached to Declaration as *Exhibit F*.

On February 24, 2026, Platinum's attoreny requested information from Feigen's counsel as to the number and *identity* of Feigen's creditors.  Feigen's counsel responded that Feigen has more than twelve creditors but again failed to provide any other supporting information or details as to the identity and amounts of the debts.  Courts reject attempts to inflate creditor counts with nominal or unsupported claims. *In re Elsa Designs*, 155 B.R. 155 B.R. 859, 864 (Bankr. S.D.N.Y. 1993); *In re Blaine Richards & Co.*, 10 B.R. 424 (Bankr. E.D.N.Y. 1981).

4937-2698-4872, v. 4

To review the debts Feigen now claims to owe:

1. Par 54-58 of the Declaration lists the CLS Judgment.  This was previously disclosed by Feigen in his responses to interrogatories.

2. Par 59-61 of the Declaration lists the Modern HR Judgment.  This was also previously disclosed by Feigen in his responses to interrogatories.  Curiously, since December 2025, Feigen has paid Modern HR the sum of $475,000 toward a settlement of $530,000 – all of which would be within the preference period from the petition date. As Modern HR is receiving payments from Feigen and is likely seeking to protect the payments already received (and not have such payments avoided as preferential), it is not surprising that Modern HR supports Feigen's motion to dismiss.

3. Par 62 of the Declaration lists the IWC Judgment.  This judgment was also disclosed by Feigen in his response to Interrogatories, which, at that time, no amount of the settlement of $160,000 was paid to IWC. Apparently more recently, Feigen has initiated payments to IWC – again attempting to prefer some creditors over others.

4. Par 63 of the Declaration lists an Aztec Judgment in the amount of $410,569.67 entered on March 15, 2024 jointly and severally against Feigen and SA Hospital.  This judgment was omitted from the Interrogatory disclosures.  Feigen's counsel failed to provide information on the Aztec Judgment in his response to Platinum's counsel on February 24, 2026.  Feigen failed to provide a copy of the Judgment and information on whether any payments have been made on the Aztec Judgment. Moreover, this judgment does not appear on a judgment search in New York and California.

5. Par 64 of the Declaration lists "other debts arising from the SA Hospital transaction." Specifically, Feigen mentions $1,500,000 owed to Twain Financial Partners on account

12

of a 99-year ground lease for SA Hospital which Feigen guaranteed.  Feigen fails to provide documentation to support this debt or information as to whether there has been a default in payments to trigger the guaranty (in such case it would be a contingent liability excluded from the 12 creditor count). *See In re Mavellia,* 149 B.R. 301, 304 (Bankr. E.D.N.Y. 1991) *citing In All Media Properties, Inc.*, 5 B.R. 126, 133 (Bankr. S.D.Tex. 1980) (a guaranteed debt is contingent until the principal maker defaults until then "no obligation arises"). Finally, Feigen fails to provide information as to the secured nature of the debt owed to Twain Financial Partners.

6.  Par 65 of the Declaration lists four potential creditors which were omitted from Feigen's responses to interrogatories and were not disclosed to Platinum upon request for creditor information on February 24, 2026.  Platinum requests proof of such debts to investigate whether they are in fact outstanding and owed by Feigen personally.

7.  Par 66 of the Declaration lists State of Arizona tax obligations in the amount of $19,521.  Feigen fails to provide any evidence of the outstanding tax obligation.  He failed to disclose this debt in his responses to interrogatories and his counsel failed to provide information about this debt in his response to Platinum's counsel.

## III.    OTHER CREDITORS MAY JOIN IN THIS INVOLUNTARY CASE

Section 303(c) of the Bankruptcy Code allows additional creditors to join an involuntary petition after its filing and before adjudication.  The statute contains no restriction to prevent joinder for the purpose of satisfying the three-creditor requirement.  Section 303(c) is interpreted liberally to allow creditors to join an involuntary petition at any time before dismissal or entry of an order for relief.  *Key Mech, Inc. vs. BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d 111, 122 (2nd Cir. 2003)*.*  Joinder ensures that an otherwise valid petition is not dismissed on technical grounds

13

and is allowed as a matter of right before adjudication. *Id.* (joinder is permissible so long as the case has not been dismissed). As explained in *In re Trusted Net Media Holdings, LLC,* 550 F.3d 1035, 1040 (11th Cir. 2008), courts favor allowing joinder to relate back to the petition date, thereby avoiding dismissal for curable defects.

In this case, to the extent that Feigen meets his burden to show that he has more than twelve creditors, such creditors should be afforded an opportunity to join this involuntary case – which is otherwise valid.

## IV.    In Unlikely Event that Involuntary is Dismissed – No Damages are Warranted

In the unlikely event that the involuntary is dismissed, no damages are warranted in this case. When there is no basis to overcome presumption that a creditor acted in good faith, damages are not awarded. *In re Bayshore Wire Products Corp.,* 209 F.3d 100, 106-107 (2nd Cir. 2000) (reversing the award of damages because creditor had good faith basis to file the involuntary). In this case, Platinum's debt is not subject to a bona fide dispute. Feigen's substantial and alarming dissipation of assets as shown by his discovery responses was a good faith basis to file the involuntary petition. Moreover, Feigen admitted that he had less than twelve creditors in Feigen's Verified Response. His counsel did not provide a list of twelve creditors upon request or otherwise provide information to support his conclusory statement that Feigen had more than twelve creditors. As such, should this case be dismissed on technical grounds due to numerosity, any imposed damages would inhibit Platinum or any other bona fide creditors from seeking involuntary relief under such valid and good faith circumstances.

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court deny Feigen's Motion to Dismiss, and grant any other relief that the Court deems just and proper.

14

4937-2698-4872, v. 4

Dated: May 5, 2026

**GUTNICKI LLP**
*Attorneys for Petitioning Creditor*

*By:  /s/ Miriam Stein Granek*
Miriam Stein Granek, Esq.
Jeremy Sykes, Esq.
4711 Golf Road, Suite 200
Skokie, IL 60076
Telephone: (847) 933-9280
mgranek@gutnicki.com
jsykes@gutnicki.com

15

4937-2698-4872, v. 4